### In re Donald Malcolm GARNAS and Ruth Larue Garnas, Debtors.

**Bankruptcy No. 83–05232.**

United States Bankruptcy Court, D. North Dakota.

June 7, 1984.

---

ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the court is the application for fees and expenses filed by attorney Daniel L. Wentz, counsel for the Debtors, brought pursuant to section 330 of the Code. Counsel filed his application on April 13, 1983, seeking total fees and expenses of $51,-376.97 ($48,987.00 fees and $2,389.95 expenses) which after adjustment for a retainer of $12,000.00 and additional sums advanced for costs leaves a balance due of $38,247.22. Objections were interposed to both the fees and expenses by the Unsecured Creditors Committee, the United States Trustee, Norwest Bank-Fargo and the United States of America. The application came on for hearing on May 8, 1984.

■ This Chapter 11 case was filed on April 21, 1983. Attorney Wentz represented the Debtors commencing April 20, 1983, and assisted them with the preparation of their petition and schedules plus numerous other matters incidental to the preservation of their farm and its reorganization. In total some 544 hours of time were devoted to the case either by attorney Wentz or his associates between April 21, 1983, and April 9, 1984. All time was billed at the rate of $90.00 per hour which is a usual and ordinary hourly rate for experienced bankruptcy counsel in this area. The sum of $1,723.75 of the total requested expenses represent photocopying charges which some courts have determined to be completely non-compensable because such photocopying charges are an overhead expense and should not be separately recovered apart from the attorney's fees. *In re Horn and Hardart Baking Co.*, 30 B.R. 938 (Bkcy.E.D.Pa.1983). This court disagrees and recognizes that firms in this area typically bill clients for photocopying charges and firms engaged in bankruptcy practice should not be treated any differently. While $1,723.75 seems somewhat high, the court is not prepared to say it is inordinately high or unwarranted.

A more difficult issue is presented with respect to the fees. During the nearly one year of pendency, no plan of reorganization was ever filed in this case and on April 16, 1984, the Debtors, through counsel, moved for its dismissal. Dismissal was directed to be entered on May 8, 1984.

■ The review of attorney fee applications is a particularly onerous task for any bankruptcy court but it is an obligation incumbant upon the court regardless of whether or not objections are even filed. *In re Hamilton Hardware*, 11 B.R. 326 (Bkcy.E.D.Mich.1981). The starting point for any review of an application for fees and expenses should begin with an examination of the itemized application in context of the objectives of Chapter 11 and the nature, complexity and status of the case itself. The results of this preparatory examination are then gauged against the often cited criteria of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) which have been utilized by this and many other bankruptcy courts. These criteria are: (1) the time and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time pressures; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *See also In re Yermakov*, 718 F.2d 1465 (9th Cir.1983), *In re Werth*, 32 B.R. 442 (Bkcy.Colo.1983); *In re Casco Bay Lines, Inc.*, 25 B.R. 747 (Bkcy.App. Panel 1st Cir.1982); *In re Doyle-Lunstra Sales Corp.*, 19 B.R. 1003 (Bkcy.S.D.1982).

■ The mere magnitude of the file and the number of hours contributed to the case by Debtor's counsel is not particularly indicative of any of the foregoing factors except for the element of time and labor. The whole purpose of a Chapter 11 filing is to accomplish the debtor's reorganization and net out a fair return for the unsecured creditors. This being the objective, the

court agrees with several of the objecting parties in that the major and overall criterion for compensation must be the value of the services to the Debtor. See *In re International Coins & Currency, Inc.,* 22 B.R. 127 (Bkcy.D.Vt.1982) and *In re Kimberling Inn Resort and Vacation Club,* 15 B.R. 688 (Bkcy.W.D.Mo.1981) where the courts held that the paramount consideration in determining reasonableness of fees is the result achieved or benefit conferred upon a Chapter 11 estate. Neither the size of the file nor the hours spent have a pervasive bearing on this aspect of the inquiry. While it is true that under the Code attorneys in bankruptcy practice are to be compensated at a rate commensurate with other fields of practice, such does not amount to a guarantee nor should it mean that compensation in bankruptcy cases should be awarded irrespective of the result. The services envisioned by section 330 are services to the estate resulting in some meaningful benefit received. If results were not given primary emphasis then there would be a proclivity on the part of professionals to engage in unwarranted and protracted work with the expectation of being compensated no matter how ineffective or unwarranted the endeavor. If counsel were assured of payment heedless of the merits or economy of litigation, then these factors typically considered by attorneys in any field of practice would be removed as a consideration in the area of bankruptcy practice. No doubt counsel in the instant case labored diligently on behalf of the Debtors which engendered a high degree of loyalty on the part of the Debtors themselves. However, a review of the file does not make it apparent that a successful reorganization was ever a likely prospect in view of the substantial secured indebtedness. (The total unsecured indebtedness in this case was in the area of $75,000.00). As the case progressed this fact became more apparent and finally resulted in a dismissal. The result is that all of the work done by counsel over the past year has not achieved the purpose of Chapter 11. In other words, regardless of how diligent counsel's work was, it did not re-

sult in any particular value to the estate. In considering the present fee application, the Court cannot ignore this lack of success. Full compensation is warranted when all the foregoing elements have been satisfied and a demonstrable benefit has inured to the estate. On occasion attorneys have even been awarded what amounts to a bonus for exemplary work resulting in exceptional success. *In the Matter of Aminex Corporation,* 15 B.R. 356 (Bkcy.S.D.N.Y.1981). Efforts which have been met by failure cannot be compensated at the same rate as those which have been successful because the paramount element of value to the estate is missing. See: *Matter of Multiphonics, Inc.,* 622 F.2d 731 (5th Cir.1980).

Based upon the foregoing factors and after a review of the file and counsel's time records, the court concludes that the sum of $48,987.00 sought by attorney Daniel L. Wentz is excessive and must be reduced by 50% in this instance. Accordingly, fees for legal services are allowed in the sum of $24,493.50. Expenses are allowed in the sum of $2,389.95 for a total of $26,883.45. Subtraction of the retainer previously received of $12,000.00 leaves a balance due of $14,883.45.

SO ORDERED.