### In re John Samuel MARLAR.

### No. 1:98BK11358M.

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Sept. 27, 2004.

---

2. The Debtor does not dispute that the estate received value for the use of the truck in the amount of the claim.

Robert L. Depper, Jr., Depper Law Firm, Ted Botner, Compton, Prewett, Thomas, & Hickey, El Dorado, AR, for Debtor.

Renee S. Williams, Attorney at Law, Hot Springs, AR, Thomas S. Streetman, Streetman, Meeks & McMillan, Crossett, AR, for Trustee.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On June 25, 1998, an involuntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code was filed against John Marlar ("Debtor"). An order for relief was entered on December 18, 1998. On December 22, 1998, the U.S. Trustee appointed Renee Williams as Trustee, and on May 24, 1999, an order was entered by the Court approving Thomas S. Streetman ("Streetman") as attorney for the Trustee.

On January 5, 1999, the Debtor filed his schedules and statement of affairs reflecting that the Debtor's sole assets consisted of personal property valued at $1000.00. The schedules listed liabilities totaling $98,558.74 and income of $125.00 per month from food stamps. On September 15, 1999, the Debtor filed amended schedules reflecting that he owned 40 acres of real property valued at $38,000.00 and that he claimed this property as exempt as his homestead.

On February 25, 2003, Streetman filed a second application for attorney's fees and expenses in the sum of $23,021.50. On March 20, 2003, an order was entered awarding Streetmen $23,021.50 in attorney's fees. The order allowing the fees was vacated by order of the Court on July 22, 2003, based on a claim by the Debtor and his counsel that they had not received notice of the hearing on Streetman's attorney's fee application.

On July 25, 2003, the Debtor objected to Streetman's fee request and a hearing was held on October 23, 2003, on the Debtor's objection. On November 10, 2003, an order was entered overruling the objection to Streetman's fees and awarding the full amount less $150.00 for a duplicate charge. The Court also awarded Streetman an additional fee of $1000.00 for defending the fee application against the Debtor's baseless objection.

The Debtor appealed the order to the United States District Court for the Western District of Arkansas, and on September 2, 2004, the District Court remanded the matter to this Court to make more detailed findings of fact in support of the Court's legal conclusion that the fee request is proper.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## DISCUSSION

█ Compensation in bankruptcy cases is governed by 11 U.S.C. § 330, which provides generally that after notice and a hearing, the Court may award to an attorney employed under 11 U.S.C. § 327 "reasonable compensation for actual, necessary services."

The lodestar method is the approach used by courts in the Eighth Circuit to determine reasonable compensation awarded an attorney pursuant to section 330. *Chamberlain v. Kula (In re Kula),* 213 B.R. 729, 736 (8th Cir. BAP 1997) (citing *P.A. Novelly v. Palans (In re Apex Oil Co.),* 960 F.2d 728, 731 (8th Cir.1992)). This method calculates the lodestar amount by multiplying the reasonable hourly rate by the reasonable number of hours required. *Bachman v. Laughlin (In re McKeeman),* 236 B.R. 667, 671 (8th Cir. BAP 1999). The statute sets out a list of factors to be considered in determining the amount of reasonable compensation to be awarded. The Court is directed to consider the nature, extent, and value of the attorney's services, taking into account relevant factors including:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(E) (2000).

In determining the reasonableness of attorney's fees, many courts, including this Court, have been guided by the factors enunciated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). Although stated differently, these criteria are similar to the factors enumerated by the statute. See *McKeeman,* 236 B.R. at 671 (stating the Johnson factors parallel factors listed under section 330). The Johnson factors consist of the following:

1. Novelty and difficulty in question;

2. The skill required to perform the legal service properly;

3. The experience, reputation and ability of the attorneys;

4. Customary fee;

5. Whether the fee is fixed or contingent;

6. The preclusion of other employment by the attorney due to acceptance of the case;

7. The amount involved and the results obtained;

8. Time limitations imposed by the client or circumstances;

9. The undesirability of the case;

10. The nature and length of the professional relationship with the client;

11. Awards in similar cases; and

12. Time and labor required.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *See also In re Werth,* 32 B.R. 442 (Bankr. D.Colo.1983); *In re Global Int'l Airways Corp.,* 38 B.R. 440, 442–43 (Bankr.W.D.Mo. 1984); *In re Garnas,* 40 B.R. 140 (Bankr. D.N.D.1984). The burden of proof as to the reasonableness of the requested compensation is on the applicant. *In re Werth,* 32 B.R. at 444 (citations omitted).

### HISTORY OF THE CASE

In his testimony, Streetman reviewed briefly the history of the case, which is now six years old. In his schedules, the Debtor indicated that he was impoverished, owning only $1000.00 in clothing and furniture and subsisting on $125.00 in food stamps. Through investi-

gation, Streetman discovered that the Debtor had grossly misrepresented his financial condition.

On behalf of the Trustee, Streetman successfully set aside transfers of real property fraudulently conveyed by the Debtor. Streetman also prevailed on his objection to the Debtor's claim of homestead and objection to the Debtor's discharge. Additionally, Streetman successfully defended his victories at the trial court level when they were appealed by the Debtor to the Bankruptcy Appellate Panel and the Eighth Circuit Court of Appeals. Because of the persistence and skill of her counsel, the Trustee has been able to liquidate enough assets to pay all creditors in full, including administrative claims and taxes, and there is a possibility of a distribution to the Debtor.

Hence, the results of the attorney's efforts were substantial. Streetman essentially turned a no-asset case into one in which all creditors will be paid in full, including the payment of interest on unsecured claims, and possible dividends to the Debtor. Results such as these are exceedingly rare in a bankruptcy case and have only occurred three or four times during this judge's 21 years on the bench.

Additionally, in obtaining the denial of discharge with regard to this dishonest debtor, justice was served. The order denying the discharge acts as a deterrent of similar conduct by future debtors, even though the practical effect in this case will be minimal because all the Debtor's debts will be paid and he will not suffer the usual financial consequences of a denial of discharge.

The case did involve novel and difficult questions of law, especially a question regarding the effect of an adverse ruling in state court on the issue of an alleged fraudulent conveyance of the same property that was subsequently set aside in the bankruptcy case.

The case required the expertise of a skilled bankruptcy attorney. Streetman has twenty years of concentrated bankruptcy practice and enjoys an excellent reputation with the Court that is unsurpassed by any other lawyer in this state.

The customary fee for services by an attorney for a trustee in a case such as this is determined by the lodestar method that is based on the hourly rate for services rendered multiplied by the hours expended. Streetman charged the estate $250.00 per hour and his partner, William S. Meeks, charged $230.00 per hour.[1] The rate charged is on the high end of fees generally charged by Arkansas attorneys and is allowed to only the most experienced and capable bankruptcy practitioners in the state. The Court finds that the rate of $250.00 an hour is a reasonable hourly rate for an attorney of Streetman's experience and demonstrated expertise.

Also relevant in this case is the question of whether the fee was fixed or contingent. Streetman pointed out that he worked for three years without being compensated at all and that he advanced approximately $4000.00 in expenses until the Debtor's assets could be recovered and liquidated. Therefore, he proceeded under what was essentially a contingency arrangement with the Trustee and should be entitled to a higher fee award to compensate him for the risk of not being paid at all.

As to other applicable factors, the case consumed considerable time although it should not have precluded other employment for Streetman because of his participation in this case. The case has some

---

1. Meeks' participation was minimal. The Court finds that Meeks' hourly rate is also reasonable in light of his bankruptcy expertise.

undesirable aspects because of the Debtor's open hostility toward Streetman. The fee award sought is not unusual when compared to awards of similar cases, especially considering the successful results. The time and labor required by this case has been extensive. Much of Streetman's legal work has been necessitated by the Debtor, who has challenged the Trustee at every opportunity, often without regard to the merits of his objections.

Once the applicant has met his burden of proof as to the reasonableness of the fee request, the burden shifts to the objecting party. As started in a leading treatise on bankruptcy, "A party objecting to the amount of time spent on services has the burden of proving that too much time is spent and cannot merely allege a general dissatisfaction with the results." 3 Collier on Bankruptcy ¶ 330.04[4][a][I] (Alan N. Resnick & Henry J. Sommer *et al.* eds., 15th ed. rev.1993).

The Debtor testified in support of his objection to Streetman's fee request. The Debtor stated that Streetman had benefitted the estate "from an illegal standpoint ... and fraud." (Tr. at 44.) The Debtor was sometimes incoherent, as exemplified by the following excerpt from his testimony at the hearing:

A. I think the Judge—he's threatened me with sanctions, and we hadn't give a dollar amount yet as far as him charging me $1,000 for pursuing whether there was logging going on, $500 to have the Sheriff go up there and find out no logging; and he hired a surveyor to go up there that did nothing. He did absolutely nothing; he didn't survey anything.

Mr. Streetman knows as well as I do that when you've got an abstract there, it shows who owns the property, any liens, judgments, et cetera. He could have acted off of that. He's on a trip to wipe me out. We know that, and he's doing a good job of it.

He and I did not get along during the divorce. In fact, we had some real serious—

THE COURT: Well, let's—you ask a question, Mr. Depper, and you answer the question. The issue is about the attorney's fees.

MR. DEPPER: Very well, Your Honor. I think that's all I have to ask him.

THE WITNESS: Ask me about Paul Davis calling him, him charging me $400 just on a fictitious call that didn't amount to anything. And all these calls he's got listed to Renee [the Trustee], her billing showed nothing on telephone calls; and it never did happen. There's $3,000 worth of telephone calls in less than a year's time that Mr. Streetman's got me billed for, and it just ain't logical, it ain't there.

And he done $7,000 worth of abstract work on the first billing. On this billing, he's got $3,000 more worth of charges for the same thing. Anybody can pad a grocery list, and I'm saying point blank he's a liar.

(Tr. at 45–46.)

Counsel for the Debtor cross-examined Streetman about the fee request, but failed to demonstrate in any way that the services performed by Streetman were not actual, necessary, and beneficial to the estate. Cross-examination revealed no discrepancy in the lodestar calculation, no unnecessary hours billed, and no inappropriate rate charged. Under the circumstances, the objection to the fee request is frivolous.

For these reasons, the request is approved with the exception of the $150.00 duplicate charge on June 26, 2002, pointed out by Streetman in the course of his

testimony at the hearing. The Court also awards Streetman $1000.00 for defending against the Debtor's objection. This is a reasonable fee as it compensates Streetman for four hours at $250.00 an hour to prepare for and conduct an evidentiary hearing on the Debtor's objection. For the reasons stated above, $250.00 an hour is a reasonable hourly rate for an attorney of Streetman's expertise.

IT IS SO ORDERED.