### In re WASHINGTON LANE ASSOCIATES, Debtor.

**Bankruptcy No. 82–00019G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 30, 1987.

---

Shelley Sodomsky, Philadelphia Gas Works, Philadelphia, Pa., for movant, Philadelphia Gas Works.

Leonard P. Goldberger, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for the objector, Committee of Equity Sec. Holders.

Robert H. Levin, Adelman Lavine Gold & Levin, Philadelphia, Pa., for trustee.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge:

An unsecured creditor of the debtor, Philadelphia Gas Works, (PGW), a utility company, has filed an application for approval of an administrative expense claim pursuant to 11 U.S.C. §§ 503(b)(3)(D), and (4). PGW argues that it is a creditor which has made a "substantial contribution" to this case, and seeks reimbursement of attorneys fees it paid which enabled it to render this contribution. PGW seeks $7,003.50 in fees and $984.70 in expenses. The committee of equity security holders objects to this application on the ground that PGW never received prior court approval to retain counsel and so has no right to seek reimbursement of counsel fees. (N.T. at 3, 7, 11, October 15, 1984). For the reasons set forth below, I shall grant PGW's application in part.[1]

11 U.S.C. §§ 327 and 328 concern the employment of professional persons as well as their right to receive compensation, but only insofar as their employment is undertaken by the trustee (or debtor-in-possession, see 11 U.S.C. § 1107), or a creditor's committee. Both statutory provisions expressly require prior court approval.[2] Recently, the Third Circuit Court of Appeals undertook to review the need for such prior approval as well as the power of a bankruptcy court to grant retroactive approval in extraordinary circumstances. *Matter of Arkansas Co.*, 798 F.2d 645 (3d Cir.1986). In discussing the need for court oversight of the employment of professionals, the Court of Appeals referred to legislative history which expressed a congressional fear that the debtor's estate would be seriously depleted by a lack of such oversight. However, this discussion by the Court of Appeals, as well as the legislative history itself, concerned counsel for the trustee, counsel for the debtor in possession, and counsel for creditors' committee, all of which are counsel to entities having fiduciary obligations to the estate. In contrast, PGW does not seek reimbursement of counsel fees pursuant to 11 U.S.C. §§ 327 or 328; rather, PGW argues that it is a creditor in this case, has provided a substantial contribution to the case, and seeks reimbursement of counsel fees which it paid and which enabled it to perform such

---

1. At argument on this matter, PGW acknowledged that this court could undertake its own review of PGW's application for reimbursement of counsel fees and expenses, to insure that the services provided in fact rendered a substantial contribution, even though the creditor's committee did not contend that some services fell outside the scope § 503(b)(3)(D). *See In re Saroca Co.*, 46 B.R. 533, 535 (Bankr.D.Me.1985) (application under § 503(b)(3)(D) must be carefully reviewed by the court). *See generally, In re J.A. & L.C. Brown Co.*, 75 B.R. 539 (E.D.Pa. 1987).

2. *Compare* section 329, referring to counsel for the debtor, which has no requirement of prior court approval.

contribution. Section 503(b)(4) expressly permits reimbursement of counsel fees in such circumstances, where a substantial contribution to the estate has been made.

There is no statement in either section 503, generally, or subsections 503(b)(3)(D) or (4) which specifically mentions the need for prior court approval.[3] Thus, as was noted in *In re Saroca Corp.*, 46 B.R. 533, 535 (Bankr.D.Me.1985):

> Applications for allowance of administrative expenses under section 503(b)(3)(D) and (4) must be carefully scrutinized. Such applications are filed after the fact, that is, after the services have been performed or the expenses have been incurred, and without prior approval, and in many instances, without the court's knowledge. *In the case of requests for compensation for professional services, such services are rendered without the employment of such persons having been approved by the court as is usually the case.*

(emphasis added).

Generally, those decisions which have required a creditor, who seeks reimbursement of its counsel fees, to obtain prior court approval, have focused upon the creditor's assertion that it is entitled to an administrative expense under section 503(b)(3)(B) (not § 503(b)(3)(D)) since that subsection expressly states that court approval is required. *See e.g., Matter of Romano*, 52 B.R. 590, 593 (Bank.M.D.Fla.

1985); *Matter of Spencer*, 35 B.R. 280 (Bankr.N.D.Ga.1983). In fact, such a distinction—that is, that recovery under § 503(b)(3)(B) requires prior court approval but recovery under § 503(b)(3)(D) does not—was implicitly noted in *In re Calumet Realty Co.*, 34 B.R. 922 (Bankr.E.D.Pa. 1983).[4] *Accord, Matter of Romano* (expenses allowed under § 503(b)(3)(D) but disallowed under § 503(b)(3)(B)).

■ That one subsection of section 503(b) explicitly requires prior court approval while the others do not, leads me to conclude that a creditor who seeks compensation under §§ 503(b)(3)(D) and (4) need not obtain court approval prior to retaining its own counsel. *But see Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1254 (5th Cir.1986).

Having concluded that PGW's application is not precluded because it did not obtain court approval prior to retaining its counsel, I must determine whether PGW has the right to pass on to the estate, as an administrative expense, some or all of its counsel fees. Generally, counsel to a creditor represents the interests of that party and must look to that creditor, not to the estate, for compensation. *Matter of Consolidated Bancshares, Inc.*, 785 F.2d at 1253. One exception to this principle occurs when the creditor makes a "substantial contribution" to the bankruptcy case. While such phrase cannot be defined with

---

**3.** The relevant portions of section 503(b) provide:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

\*    \*    \*    \*    \*    \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

\*    \*    \*    \*    \*    \*

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

\*    \*    \*    \*    \*    \*

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under sec-

tion 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

\*    \*    \*    \*    \*    \*

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

\*    \*    \*    \*    \*    \*

**4.** In *Calumet Realty*, the court notes that no prior approval was obtained by the creditor, which happened also to be PGW. This fact is mentioned in its discussion of § 503(b)(3)(B) but not in the discussion of § 503(b)(3)(D).

great precision, it has been described as including the provision of services which "conferred a significant and demonstrable benefit to the debtor's estate and to the creditors". *Matter of Consolidated Bancshares, Inc.*, 785 F.2d at 1253 (*quoting In re General Oil Distributors*, 51 B.R. 794, 806 (Bankr.E.D.N.Y.1985)). "Substantial benefit" may also include "services which foster and enhance rather than retard or interrupt, the progress of reorganization", *see In re Calumet Realty Co.*, 34 B.R. at 924, or "which directly [benefit] the reorganization of the estate", *see In re General Oil Distributors, Inc.*, 51 B.R. at 806.

 In reviewing the description of services provided by PGW counsel, which was attached to PGW's administrative claim request, I note that many of the services provided by counsel were designed to protect PGW's interests and provided, at best, only an indirect benefit to the estate. As such, these services must be borne by PGW alone and not the other creditors of the debtor. *See In re Calumet Realty Co.* (In that matter, PGW provided no substantial contribution to the estate.) Specifically, here, PGW's counsel's involvement with the debtor's security deposit to the utility and with PGW's provision of postpetition gas services, as required by 11 U.S.C. § 366, do not constitute a substantial benefit to the estate. Similarly, counsel's review of the debtor's plan, participation at the confirmation hearing and review of the trustee's motion to sell the debtor's real estate were also of minimal benefit to the estate.

However, I agree with PGW that its fees and costs expended in obtaining court permission to install individual gas utility meters in each apartment located in the debtor's apartment building were a substantial contribution to the estate. This conversion to individual metering was undertaken in cooperation with both counsel for the trustee and the equity securities committee, in order to allow the debtor to reorganize through the sale of individual apartments. That such a plan was never confirmed, and that this case was converted to one under chapter 7, does not undercut the contribution made by PGW. H.R.Rep. 595, 95th Cong. 1st Sess. 355 (1978). *Accord Matter of Consolidated Bancshares*, 785 F.2d at 1252 n. 2.

Activities undertaken in connection with the meter conversion were performed solely by attorney A. John Egan and total 18.1 hours of time, all of which he billed PGW at the rate of $80.00 per hour. These services alone, which cost PGW $1,448.03, may be assessed against the estate. Similarly, expenses connected to the meter conversion matter will also be allowed as an administrative expense. These expenses total $488.00. In all other respects, the application of PGW for an administrative claim will be disallowed.

An appropriate order will be entered.