**In re F.E. FREDERICK ENTERPRISES, INC., Debtor.**

**KYOYA CO., LTD., Applicant,**

v.

**NO RESPONDENT, Respondent.**

**Bankruptcy No. 90–03053 JKF. Motion No. SSM–001.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 22, 1992.

Stuart S. Mermelstein, Catherine L. Welsh, Kirkpatrick & Lockhart, Pittsburgh, Pa., for Kyoya Co., Ltd.

Charles F. Bennett, Apple and Apple, P.C., Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is the motion by Kyoya Co., Ltd., a general unsecured creditor, for the payment of legal fees and expenses pursuant to § 503(b)(3)(D) and (b)(4) arising out of Kyoya's alleged substantial contribution to this chapter 11 case. For the reasons expressed below, we find that Kyoya did not make a substantial contribution and the application is denied.

Kyoya holds approximately 40% of the general unsecured claims against Debtor. Brief in Support of the Application of Kyoya Co., Ltd., at 1–2. Kyoya's chief contribution to this case consists of obtaining a modification to Debtor's plan of reorganization which accelerated the payments to general unsecured creditors in the 5th month past confirmation of the plan rather than the 37th month as originally provided in the plan. Kyoya also asserts that its effort to obtain a more specific disclosure statement was a substantial contribution to this case in that it enabled creditors to make a more informed decision regarding acceptance or rejection of the plan. Brief in Support of the Application of Kyoya Co., Ltd., for Reimbursement of Expenses at 3. Based on its success in these respects, Kyoya asserts entitlement to payment of its legal fees and expenses pursuant to 11 U.S.C. § 503(b)(3)(D) and (b)(4).

Section 503(b)(3)(D) allows a creditor to recover the actual and necessary expenses incurred in making a substantial contribution to a chapter 11 case. Section 503(b)(4) allows the recovery of reasonable compensation for professional services of an attorney or accountant incurred by an entity whose expense for same is allowable under § 503(b)(3). Thus, in order for Kyoya's application to be approved, Kyoya must establish that its effectuation of accelerated payments to general unsecured creditors and its efforts to obtain a more specific disclosure statement constituted a substantial contribution to the case.

A substantial contribution to a case includes "the provision of services which 'conferred a significant and demonstrable benefit to the debtor's estate and to the creditors.'" *In re Washington Lane Associates*, 79 B.R. 241, 244 (Bankr.E.D.Pa. 1987), *citing Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir.1986). "'Substantial benefit' may also include 'services which foster and enhance rather than retard or interrupt, the process of reorganization' ... or 'which directly [benefit] the reorganization of the estate.'" 79 B.R. at 244 (citations omitted). Finally, "unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors," recovery under § 503(b)(3)(D) and (b)(4) is precluded. *In re General Oil Distribution, Inc.*, 51 B.R. 794, 806 (Bankr. E.D.N.Y.1985).

■ A substantial contribution, i.e., bestowal of a significant benefit to the debtor and creditors, was found to exist in *In re 9085 E. Mineral Office Building, Ltd.*, 119 B.R. 246 (Bankr.D.Colo.1990). In that case a creditor created a plan which paid more to creditors than did the debtor's proposed plan. Moreover, the creditor compromised its own claim to insure the success of the creditor's plan. In *In re W.G.S.C. Enterprises, Inc.*, 47 B.R. 53 (Bank.N.D.Ga. 1985), a creditor proposed a modified settlement of a dispute between a secured creditor and the debtor which ultimately benefitted all creditors and proposed a modified plan which increased the potential payment to all unsecured creditors from 50% to 100%. Other instances in which a substantial contribution was found include *Ex parte Roberts*, 93 B.R. 442 (D.S.C.1988), wherein a creditor insisted on inclusion in the plan of reorganization a provision for interest payments to unsecured creditors which increased their recovery by up to $75,000; *Matter of Romano*, 52 B.R. 590 (Bankr.M.D.Fla.1985), a case in which creditors brought fraudulently transferred property back into the estate, generated $20,000 more from the sale of property than did the debtor's proposal, and prompted the debtor to convert the case from a chapter 7 liquidation to a chapter 11 reorganization with a 100% payment plan; *In re Richton Int'l Corp.*, 15 B.R. 854 (Bankr. S.D.N.Y.1981), in which a creditor's law firm oversaw and directed reorganization while also reconciling all parties to a proposed plan. However, a contribution which provides only an incidental benefit to the estate is insufficient to support a claim for fees and expenses. *See, In re General Oil Distributors, Inc.*, 51 B.R. 794, 805 (Bankr. E.D.N.Y.1985).

■ We find that Kyoya has not established that it made a substantial contribution to this case and therefore its motion for fees and expenses is denied. Kyoya's main contribution was to bargain for inclusion in Debtor's plan a provision for an escrow agent, to which Debtor begins payments 5 months after plan confirmation. The plan requires the escrow agent to begin disbursement to the unsecured creditors in the 17th month after confirmation. The result of Kyoya's efforts was that payments to unsecured creditors commenced 17 months, rather than the originally proposed 37 months, post confirmation. While the unsecured creditors receive earlier payment, the total amount of their payments remains unchanged over Debtor's initial proposal.[1] Thus, unlike the cases cited above, Kyoya's efforts have not added any additional funds to the estate or to the recovery of unsecured creditors. The difference in the time value of the funds placed into the escrow account to be dispersed beginning in the 17th month, as opposed to the 37th month, after confirmation is minimal and fails to justify an award under § 503(b)(3)(D) and (b)(4).

■ Second, assuming arguendo that the accelerated payment conferred a substantial benefit, the primary benefactor would be Kyoya itself which holds at least 40% of the general unsecured claims. However, if Kyoya's disputed claims are allowed, Kyoya will hold approximately 69% of the unsecured claims. Brief in Opposition to the Application of Kyoya Co., Ltd. For Reimbursement of Expenses at 4. In either event, Kyoya controls the class of unsecured creditors and any benefits resulting from Kyoya's efforts benefit it primarily and all other unsecured creditors incidentally and in minimal amounts. Although Kyoya's efforts benefit itself most of all, that fact is not controlling. What is dispositive is that the benefit is insubstantial. *Cf., In re 9085 E. Mineral Office Building, Ltd.,* 119 B.R. 246 (Bankr. D.Colo.1990) (demonstrable benefit to estate is required); *In re W.G.S.C. Enter-*

*prises,* 47 B.R. 53 (Bankr.N.D.Ga.1985) (substantial contribution is the test). An incidental or indirect benefit to the estate or creditors as a whole is not sufficient grounds for the recovery sought here. *See In re General Oil Distributors, Inc.,* 51 B.R. at 805. *See also In re Calumet Realty Co.,* 34 B.R. 922, 926–27 (Bankr.E.D.Pa. 1983) (indirect benefit).

■ Kyoya also argues that without its efforts Debtor's initial plan to pay first its secured debt and that for which its principal is personally liable would have left little incentive to pay unsecured creditors thereafter. Kyoya's assertion in this regard borders on a charge of fraudulent intent in proposing the plan. There is not a scintilla of evidence to support this contention and this argument is discounted.

■ Finally, Kyoya argues that its efforts to obtain a more thorough disclosure statement from Debtor conferred a substantial contribution. Kyoya argues that the disclosure statement filed with the first plan failed to adequately disclose the value of Debtor's assets and the extent of secured claims against Debtor's property. *See* Brief in Support of the Application of Kyoya Co., Ltd., For Reimbursement of Expenses at 2. However, at oral argument on this issue both parties indicated that many of Kyoya's objections to the first disclosure statement were waived due to the cost associated with obtaining an appraisal of Debtor's assets. In addition, in its brief on this issue, Kyoya has failed to indicate any benefit that accrued to the estate or other creditors through its efforts to obtain a second disclosure statement that satisfied Kyoya's inquiries. Thus, Kyoya has not established that its efforts to identify assets to satisfy its own claims against Debtor conferred a substantial benefit to the estate. *Cf., In re 9085 E. Mineral Office Building, Ltd., supra,* 119 B.R. at 251, n. 12 (services provided solely for the benefit of one's client are not compensable).

---

**1.** The total contribution by Debtor to the escrow account during the 5th through 24th months post-confirmation is to be $17,467.44. From the 27th to the 36th month after plan confirmation Debtor is to pay an additional $167,000.00 directly to the unsecured creditors.

Thus, we find that Kyoya's efforts to obtain an earlier payout of the same total dollar amounts and a more specific disclosure statement are not substantial contributions or significant benefits to the reorganization of this Debtor or to the creditors of this estate. Accordingly, Kyoya's application under § 503(b)(3)(D) and (b)(4) is denied.