*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 06b0013n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: HENRICKS COMMERCE PARK, LLC, | ) | |
| | ) | |
| Debtor(s). | ) | |
| _____ | ) | |
| | ) | |
| GARY GORSKI, | ) | |
| | ) | |
| Appellant, | ) | No. 05-8055 |
| | ) | |
| v. | ) | |
| | ) | |
| SAUL EISEN, | ) | |
| United States Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Youngstown
No. 02-43841

Argued: February 1, 2006

Decided and Filed: June 15, 2006

Before: AUG, LATTA, and PARSONS, Bankruptcy Appellate Panel Judges

_____

**COUNSEL**

**ARGUED:** Phillip S. Simon, SIMON & SHORT, LLC, Pittsburgh, Pennsylvania, for Appellant.
Amy L. Good, OFFICE OF THE U.S. TRUSTEE, Cleveland, Ohio, for Appellee. **ON BRIEF:**
Phillip S. Simon, Gary W. Short, SIMON & SHORT, LLC, Pittsburgh, Pennsylvania, for Appellant.
Amy L. Good, OFFICE OF THE U.S. TRUSTEE, Cleveland, Ohio, for Appellee.

————————————

**OPINION**

————————————

J. VINCENT AUG, JR., Bankruptcy Appellate Panel Chief Judge. The sole equity security holder of the debtor appeals the bankruptcy court's order entered June 15, 2005, denying his motion for payment of his attorney's fees as an administrative expense. This appeal follows the equity security holder's subsequent motion to alter or amend the June 15, 2005 order or for additional findings of fact and for a new trial, all of which were denied by the bankruptcy court's order entered July 8, 2005.

## I.   ISSUE ON APPEAL

The issue in this appeal is whether the bankruptcy court should have allowed as an administrative expense under 11 U.S.C. § 503(b)(3)(D) and (4) the professional fees of the equity security holder's attorney on the basis that the attorney's services made a substantial contribution to the debtor's chapter 11 case.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). The bankruptcy court's order of June 15, 2005, denying the equity security holder's request for allowance of administrative expense under § 503(b)(3)(D) and (4) is a final, appealable order. *See In re Economy Lodging Sys., Inc.*, 234 B.R. 691 (B.A.P. 6th Cir. 1999) (order denying administrative expense priority is a final, appealable order).

The bankruptcy court's denial of a claim for administrative expense priority pursuant to § 503 is reviewed for an abuse of discretion. *In re Economy Lodging Sys., Inc.*, 234 B.R. at 693; *see also In re Morad*, 328 B.R. 264, 268 (B.A.P. 1st Cir. 2005) ("Most courts review a court's refusal to award attorneys' fees under 11 U.S.C. § 503(b) for abuse of discretion."); *In re Weibel, Inc.*,

176 B.R. 209 (B.A.P. 9th Cir. 1994) (panel reviews award of attorney fees under abuse of discretion standard).

A bankruptcy court's interpretation of law, including the analysis of the Bankruptcy Code sections relevant here, are reviewed de novo. *In re Weibel, Inc.*, 176 B.R. at 211 ("The proper construction of Sections 327, 330 and 503 is reviewed *de novo*."). Findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013; *In re Eagle-Picher Indus., Inc.,* 285 F.3d 522, 527 (6th Cir. 2002); *In re Highland Superstores, Inc.,* 154 F.3d 573, 576 (6th Cir. 1998). A bankruptcy court's findings of fact will not be disturbed unless there is the most cogent evidence of mistake of justice. *In re Baker & Getty Fin. Servs., Inc.,* 106 F.3d 1255, 1259 (6th Cir. 1997).

## III. FACTS

On August 28, 2002, Henricks Commerce Park, LLC ("Debtor") filed for chapter 11 relief. Shortly thereafter, James Ehrman, Esq. ("Ehrman") and the firm of Porter, Wright, Morris & Arthur LLP ("Porter Wright") were approved as Debtor's counsel per order entered October 23, 2002. A year later, having become concerned about the lack of progress in the case, the Debtor's sole equity holder, Gary Gorski ("Gorski") contacted Gary W. Short ("Short") and Phillip S. Simon ("Simon") of Simon & Short, LLP ("S&S Firm") and requested that they undertake representation of the Debtor as substitute counsel. On December 31, 2003, the S&S Firm filed an application for its employment by the Debtor under 11 U.S.C. § 327(a),[1] disclosing receipt of a post-petition retainer of $17,000 from Gorski and his agreement to subsequently pay an additional $25,000. The United States Trustee objected to the retention request, questioning the S&S Firm's "disinterestedness" as a result of the retainer. During the hearing on the employment application, Short disclosed that his firm had previously represented Gorski in his personal bankruptcy case. By order entered January 26, 2004, the bankruptcy court denied the S&S Firm's employment application ("Retention Denial Order"), stating:

> As a result of Counsel's prior representation of Mr. Gorski, Mr. Gorski's payment of Counsel's retainer and agreement to pay additional fees of Counsel, this

---

[1]11 U.S.C. § 327(a) provides that a Chapter 11 debtor-in-possession "with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor-in-possession] in carrying out [its] duties under this title."

Court finds that Counsel does not meet the requirements of 11 U.S.C. Section 327(a) as interpreted by applicable Sixth Circuit case law. The possibility of a conflict is apparent even though the Debtor and its sole shareholder may now have a common purpose. Due to the many potential conflicts, the retention of counsel is prohibited under 11 U.S.C. § 327(a).

(Appellant's J.A. 80.) The Retention Denial Order was not appealed nor did the Debtor seek reconsideration.

On January 29, 2004, the S&S Firm filed a Notice of Appearance on behalf of Gorski, along with a disclosure statement and plan of reorganization proposed by Gorski. Shortly thereafter, counsel for the United States Trustee met with Gorski, Short, and Ehrman and threatened to seek the appointment of a Chapter 11 trustee if Gorski as "equity" and the Debtor did not act jointly in the case, a request to which the parties agreed. Thereafter, all filings were by the Debtor and Gorski jointly, with an order eventually being entered on March 30, 2005, confirming the Debtor's and Gorski's Third Joint Plan of Reorganization.

On May 4, 2005, Gorski filed his Motion for Payment of Equity Security Holder's Attorney's Fees as an Administrative Expense for Making a "Substantial Contribution" to a Chapter 11 Case ("Fees Motion"), in which he requested that legal fees incurred by the S&S Firm in the amount of $298,590 and expenses in the amount of $3,392.62 (total $301,982.62) be allowed and paid as an administrative expense under 11 U.S.C. § 503(b)(3)(D) and (4).[2] The Fees Motion was supported

---

[2]This statute provides in pertinent part as follows:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
. . . .
  (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
  . . . .
  (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title . . . [and]
  (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement

by a brief and affidavits from Gorski, Short and Simons. Gorski's affidavit included the statement that, "Since December 15, 2003, he has acted solely with and through the [S&S] Firm in the Bankruptcy Proceedings, both in his capacity as sole representative of the Debtor and as the sole equity security holder of the Debtor . . . ." (Appellant's J.A. 175.) The United States Trustee objected to the Fees Motion on the basis that the work performed by the S&S Firm was performed on behalf of the Debtor in contravention of the Retention Denial Order. Alternatively, the United States Trustee asserted that the requested fees were not reasonable to the extent they duplicated the efforts of Debtor's counsel, Porter Wright.

At a hearing on the matter, Short disputed the contention that his firm's services were on behalf of the Debtor, rather than Gorski. He admitted, however, that the S&S Firm performed the vast majority of the work behind the Debtor's and Gorksi's joint filings in the case, including research, fact investigation and preparation of the proposed filings, which were then sent to Porter Wright for approval prior to filing by the S&S Firm. Short also explained that the S&S Firm acted as lead counsel at all hearings in the case, although Porter Wright would appear if necessary on behalf of the Debtor. Similarly, Porter Wright reported that notwithstanding its continued representation of the Debtor, from the time the S&S Firm became involved in the case, the S&S Firm took the lead role "in driving the Chapter 11 bus." (Appellant's J.A. 233.)

On June 15, 2005, the bankruptcy court entered an order denying the Fees Motion. In its accompanying memorandum opinion, the court stated:

> In direct contravention of the [Retention] Denial Order, Gorski "chose" to employ the Firm to act not only for himself as the sole security holder, but also as the sole representative of the Debtor. Even if the motion, Brief in Support and the Gorski Affidavit were not as explicit as they are about the dual capacity retention of the Firm, the actions that the Firm details as a benefit to the estate belie that they were taken on behalf of Gorski as the shareholder only. . . . Accordingly, this Court finds that the Firm's work, as detailed in the Motion and Brief in Support, which allegedly constituted a substantial contribution to the benefit of the Debtor's estate, was actually done on behalf of the Debtor itself as well as Gorski as the sole equity security holder. The Court finds that Gorski's two roles were so intertwined that it

---

for actual, necessary expenses incurred by such attorney or accountant. . . .

11 U.S.C. § 503(b).

is impossible to separate fees that related only to representation of Gorski as sole shareholder.

Because the Firm was disqualified from acting as Debtor's counsel under § 327 by the [Retention] Denial Order, this court holds that the [S&S] Firm's Attorney's Fees are not entitled to be administrative expenses of Debtor's estate.

(Appellant's J.A. 261-62.)

On June 27, 2005, Gorski filed a Motion to Alter or Amend Judgement, Motion to Amend or Make Additional Findings of Fact and Motion for New Trial From the Order of Court Filed and Entered June 15, 2005 ("Motion to Amend"), asserting that § 503(b)(3)(D) and (4) does not require counsel of an equity security holder to be disinterested, i.e., § 327(a) does not apply to an analysis under § 503(b)(3)(D) and (4). According to Gorski, the Retention Denial Order was not relevant to the § 503(b)(3)(D) and (4) analysis because this section does not require an attorney or other professional to obtain prior approval from the court before performing services. Gorski also asserted that he had an independent right to undertake the tasks he did and the S&S Firm's work in no way prohibited Porter Wright from taking any action. Gorski further maintained that the Debtor continued to be represented by Porter Wright and that he, as the sole equity security holder, was represented by the S&S Firm.

The United States Trustee objected to the Motion to Amend, arguing that Gorski had failed to state any legal or factual basis warranting reconsideration, such as new evidence, an intervening change in the law, or the risk of manifest injustice. The United States Trustee further alleged that Gorski had ample opportunity to provide all legal and factual support for his request both before and after the hearing on the Fees Motion.

By order entered July 8, 2005, the bankruptcy court denied Gorski's Motion to Amend, agreeing with the United States Trustee that Gorski had not presented any evidence or referenced any law changes that would warrant reconsideration of the underlying Fees Motion. The bankruptcy court also observed that Gorski had misunderstood the court's previous ruling:

The court did not hold that an equity security holder's professionals must be disinterested in order to be awarded reasonable compensation under § 503(b)(3)(D) and (4); the court held that by the express terms of the Motion for Attorney's Fees, the Brief in Support thereof and Gorski's sworn Affidavit, the Motion for Attorney's Fees sought compensation for attorney's fees Gorski incurred both in his capacity as sole representative of the Debtor and as sole equity security holder. There is no

question that Debtor's counsel is required to be disinterested under § 327(a). The fact that Gorski used Simon and Short to perform legal services for himself in his individual capacity while simultaneously performing the same legal services for the Debtor does not remove the requirement of disinterestedness.

Gorski argues that the "common purpose" of the equity security holder and the Debtor should not be the basis for denial of the Motion for Attorney's Fees. It is not the fact that equity and the Debtor had a "substantial identity of interest" that compelled denial; it is the fact that Simon and Short performed legal services for and on behalf of the Debtor that required denial of that motion.

(Appellant's J.A. 306-07 (emphasis in original).)

The bankruptcy court also denied Gorski's request in the Motion to Amend for an evidentiary hearing, noting that Gorski had never requested an evidentiary hearing on his Fees Motion. The bankruptcy court also cited a specific point during the original hearing when Gorski was offered the opportunity to present any further evidence or argument but declined to do so.

Gorski filed a timely Notice of Appeal on July 18, 2005.

## IV. DISCUSSION

In his appeal of the bankruptcy court's ruling, Gorski again argues that the bankruptcy court should not have considered the Retention Denial Order in its analysis of Gorski's Fees Motion. Gorski reiterates that the text of § 503(b)(3)(D) and (4) requires neither prior approval nor disinterestedness of the professional and that the only relevant inquiry under this provision is whether the services made a substantial contribution and were reasonable. Gorski further contends that the bankruptcy court erred in its finding that the Debtor utilized the services of the S&S Firm and alternatively argues that such a finding is irrelevant to the substantial contribution analysis.

The United States Trustee, in its response to Gorski's appeal, takes a completely different tack than in its previous filings. The United States Trustee now agrees that the S&S Firm's disqualification under § 327(a) should not have automatically precluded treatment of its attorney's fees as an administrative expense, but argues that Gorski still could not have met the burden of § 503(b)(3)(D) and (4). According to the United States Trustee, should the bankruptcy court undertake an analysis of § 503(b)(3)(D) and (4), it would find that the services of the S&S Firm were rendered on behalf of the Debtor rather than Gorski because the firm's representation encompassed almost exclusively the specific responsibilities and duties of a debtor-in-possession. The United

States Trustee seeks a remand so that the bankruptcy court may conduct an analysis of the facts under the full § 503(b)(3)(D) and (4) standard.

Gorski asserts in his reply brief that since the United States Trustee has essentially abandoned his argument, the United States Trustee has therefore conceded the appeal. Gorski also continues to maintain that the services at issue satisfy the requirements of § 503(b)(3)(D) and (4). Accordingly, Gorski asks the Panel to reverse the bankruptcy court's order and remand this case for a full hearing on the issues of whether the services provided by the S&S Firm were reasonable and provided an actual and demonstrable benefit to the estate.

We affirm the bankruptcy court's order denying the Fees Motion and conclude that remand is inappropriate. As a preliminary matter, Gorski and the United States Trustee are correct in their assertion that § 503(b)(3)(D) and (4) does not require prior court approval, that it contains no disinterestedness requirement, and that an order denying a firm's retention as a debtor's attorney should not as a general proposition automatically disqualify payment of the firm's fees as an administrative expense under § 503(b)(3)(D) and (4). *See, e.g., In re Washington Lane Assocs.*, 79 B.R. 241, 243 (Bankr. E.D. Pa. 1987) (creditor who seeks compensation under § 503(b)(3)(D) and (4) need not obtain court approval prior to retaining its own counsel). Section § 101(14) of the Bankruptcy Code defines "disinterested person" as one who is not a creditor or an equity security holder, both of which may be expressly authorized under § 503(b)(3)(D) to seek compensation and reimbursement where a substantial contribution has been made in a chapter 11 case.

Furthermore, the parties are correct in their general statement of the appropriate inquiry under § 503(b)(3)(D) and (4): whether the entity seeking an administrative claim has made a substantial contribution to the chapter 11 process and whether the requested fees are reasonable. However, by its very terms, allowance under § 503(b)(3)(D) and (4) is limited to certain specified entities: "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders . . . ." Thus, before the issues of substantial contribution and reasonableness may be addressed, a movant under § 503(b)(3)(D) and (4) must establish that it is one of the covered entities.

Gorski contends that because he is an equity security holder and because he retained the S&S Firm to act on his behalf, he and his attorney's fees fall within the parameters of § 503(b)(3)(D) and

(4) and, therefore, the bankruptcy court erred in not proceeding with the substantial contribution/ reasonableness analysis. However, this simplistic argument ignores the reality of the facts in this particular case.

It was undisputed that the work performed by the S&S Firm was work which would routinely be performed by a debtor's counsel. As stated in Gorski's affidavit, the firm's work included "formulating, discussing, approving and filing all plans of reorganization . . . ; discussing, commencing, prosecuting and settling actual and potential litigation . . . ; and such actions as is [sic] necessary for a debtor to comply with its obligations under the Bankruptcy Code and those action[s] required of the Debtor in the Bankruptcy Proceeding." (Appellant's J.A. 175.) Consistent therewith, Short's affidavit submitted in support of the Fees Motion indicated that Short's primary role in the bankruptcy case was "formulating and filing three joint plans of reorganization of Gorski and the Debtor as well as compiling the information necessary for and formulating and filing the related five disclosure statements; . . . developing an overall strategy for conclusion of the Chapter 11 proceeding of [the Debtor] . . . ; working with Gorski to obtain and present for filing the monthly operating reports filed in the Bankruptcy Proceeding; . . . dealing with miscellaneous case administration matters and business operations of the Debtor's matters . . . ; and filing Motions for Approval of Professionals needed related to the Chapter 11 proceeding . . . ." (Appellant's J.A. 180.) Short went on to state in his affidavit that "Ehrman [Debtor's counsel] was consulted by the [S&S] Firm on these plans, settlement negotiations and Adversary Proceeding actions, but did not actively participate in the plan formulating and drafting, these settlement negotiations and important actions in the Adversary Proceedings . . . ." (Appellant's J.A. 180.) Counsel for Gorski even admitted at oral argument that the work his firm performed on behalf of Gorski was not that different than work it would have done on behalf of the Debtor.

Gorski was not just an equity security holder of the Debtor; he was its *sole* equity security holder and its *sole* managing member. As recognized by the bankruptcy court in denying the Fees Motion, Gorski stated as much in his affidavit submitted in support of the motion: "Since December 15, 2003, [Gorski] has acted solely with and through the [S&S] Firm in the Bankruptcy Proceedings, both in his capacity as sole representative of the Debtor and as the sole equity security holder of the Debtor." (Appellant's J.A. 175.)

The record in this case also establishes that Short essentially admitted his firm's representation of the Debtor through Gorski at the hearing on the Fees Motion when he agreed with the bankruptcy court's statement that Gorski as the sole managing member of the Debtor and as its only equity security holder "were not two different entities," (Appellant's J.A. 217); but "were actually one and the same individual in terms of directing both their actions . . . ." (Appellant's J.A. 218.) Short also conceded at the hearing that the S&S Firm "never saw a great distinction between the two . . . ." (Appellant's J.A. 217.)

It was clear that once the S&S Firm became involved in the case, the role of Porter Wright was diminished significantly to little more than an advisory role to the S&S Firm. As previously noted, an attorney with Porter Wright stated at the hearing on the Fees Motion that from the time the S&S Firm made an appearance in the case, it took the lead role "in driving the Chapter 11 bus." (Appellant's J.A. 233.) Gorski admitted in his affidavit that once the S&S Firm was in the picture, he no longer had any dealings with Ehrman. (Appellant's J.A. 176 ("After December 15, 2003, [Gorski] has had no substantial contact with Ehrman about the Bankruptcy Proceeding other than a few, brief conversations with Ehrman in the presence of Short, which occurred, shortly before, at, or after, court hearings in this Bankruptcy Proceeding.").)

Finally in this regard, it cannot be overlooked that the S&S Firm made an appearance on behalf of Gorski only three days after the bankruptcy court entered an order refusing to substitute the S&S Firm as counsel for the Debtor. Based on this fact and all of the foregoing undisputed evidence, this Panel finds no clear error in the bankruptcy court's factual finding that the S&S Firm's work was actually performed on behalf of the Debtor itself.

Gorski's second point of attack in this appeal is that any factual finding that his firm was also representing the Debtor is not relevant to a determination of his Fees Motion under § 503(b)(3)(D) and (4). As the bankruptcy court concluded, Gorski is mistaken in this regard. The fact that the S&S Firm, through Gorski, was representing the Debtor, in all but name only, was highly relevant to whether the fees incurred by the S&S Firm were entitled to administrative expense status. Fees to professionals employed by the estate are awarded under § 330 of the Bankruptcy Code after the professional has been retained under § 327. It is obvious to this Panel, as it was to the bankruptcy court, that when Gorski could not retain whom he wanted to represent the Debtor through the direct

and legitimate route of § 327, he simply hired counsel on his own and had that firm perform the Debtor's work under the guise that the attorney was representing him as an equity security holder. To countenance this subterfuge by granting administrative expense status to Gorski's attorney fees would permit a professional to circumvent the safeguards imposed by § 327 on a debtor's employment of professionals. The bankruptcy court wisely refused to play along, notwithstanding that the Fees Motion may have facially fallen within the parameters of § 503(b)(3)(D) and (4). The bankruptcy court appropriately examined what actually transpired in this case and refused to apply these Bankruptcy Code provisions in a vacuum.

This Panel notes that no previous court has appeared to address the precise issue in this case, presumably because of its unique facts. There is language, however, from similar cases that is instructive in this regard, as the bankruptcy court noted. In *Milwaukee Engraving*, the court observed:

> May a bankruptcy court compensate an attorney for services despite denying an application under § 327? That issue was resolved in *Singson* [*In re Singson*, 41 F.3d 316 (7th Cir. 1994)], which answered "no." *Singson* concluded that it would vitiate the limitations of § 327 if a bankruptcy court could deny an application under that section and order the estate to pay for the legal services anyway. Moreover, the structure of § 503(b) strongly implies that professionals eligible for compensation must receive it under § 503(b)(2) which depends on authorization under § 330 or § 1103(a) (and thus on approval under § 327). One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2).

*In re Milwaukee Engraving Co.*, 219 F.3d 635, 637 (7th Cir. 2000). *See also In re HSD Venture*, 178 B.R. 831, 835 (Bankr. S.D. Cal. 1995) (court observed that allowing a creditor who could not be employed by the estate to nevertheless provide postpetition services to the estate and have a claim allowed as an administrative expense "would eviscerate §§ 327, 101(14) and the policies of control of employment of professionals").

Gorski argues that the bankruptcy court erred in its reliance on the *Milwaukee Engraving* case because it dealt with §§ 330 and 327, which require prior court approval and disinterestedness, unlike § 503(b)(3)(D) and (4) which have no such requirements. If the S&S Firm has been performing services on behalf of Gorski only in his capacity as equity security holder, his argument would be valid. The distinction here is critical: Because the S&S Firm was in effect representing

the Debtor, it could not bypass the §§ 327 and 330 employment and application process by receiving payment under the § 503(b)(3)(D) and (4) route. *Milwaukee Engraving* is helpful in this regard, even though it does not involve the same Bankruptcy Code provisions, because it confirms the principle that a professional can recover fees for representing a debtor in a case only if it complies with § 327.

Lastly, as to the United States Trustee's assertion that remand of this case is appropriate, the Panel disagrees. As previously concluded, the bankruptcy court did not err in its determination that the S&S Firm's work was performed not only on Gorski's behalf as sole equity security holder but also on behalf of the Debtor itself. Due to the nature of the services rendered by the S&S Firm, the evidence also supports the bankruptcy court's conclusion that it was impossible to separate fees that related only to the S&S Firm's representation of Gorski as an individual shareholder from those which related to the Debtor. (It must be noted that Gorski has never identified any services performed on his behalf in his capacity as the Debtor's managing member that are separate from those performed on behalf of Gorski as an equity security holder, and Gorski has not otherwise disputed the bankruptcy court's conclusion in this regard.) The bottom line is that the fees incurred by the S&S Firm on behalf of Gorski in his capacity as the Debtor's sole managing member are not compensable under § 503(b)(3)(D) and (4) because the provisions do not cover fees incurred on behalf of a debtor. And, any services performed by the S&S Firm on behalf of Gorski in his capacity as an equity security holder are not compensable under § 503(b)(3)(D) and (4) because they are so intertwined with the services the S&S Firm performed for the Debtor. Because the bankruptcy court correctly concluded that Gorski was not entitled to payment of any of his attorney's fees under § 503(b)(3)(D) and (4), a remand for application of these provisions would be incongruous with this Panel's affirmance.

## V. CONCLUSION

The legal services of the S&S Firm were performed on behalf of Gorski as both sole equity security holder and sole representative of the Debtor. As such, the services must be analyzed under § 327 of the Bankruptcy Code. The S&S Firm was expressly prohibited from performing services for the Debtor per the Retention Denial Order. Consequently, Gorski's request that his attorney's fees be given administrative expense status is not within the scope of § 503(b)(3)(D) and (4) and need not be compared against the "substantial contribution" and "reasonableness" requirements of

that section. Nor will this case be remanded for a determination of which tasks were performed on behalf of the Debtor and which were for Gorski as sole equity shareholder.

The decision of the bankruptcy court is AFFIRMED.